UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

COREY INFANTINO, on behalf of himself and all others similarly situated,

          Plaintiff,

v.

SEALAND CONTRACTORS CORP. and DANIEL BREE, individually,

          Defendants.

Civil Action No.:
6:20-CV-06782-EAW-MWP

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION AND IN SUPPORT OF DEFENDANTS' DEMAND FOR ARBITRATION OR IN THE ALTERNATIVE, MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS................................................................................................................ii

TABLE OF AUTHORITIES .......................................................................................................iii

PRELMINARY STATEMENT.................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 2

    A. Relevant Procedural History............................................................................................ 2

    B. The Parties ....................................................................................................................... 3

ARGUMENT................................................................................................................................ 7

    POINT I     PLAINTIFF'S DISPUTE OVER THE AMOUNT OF WAGES PAID IS
                  SUBJECT TO THE GRIEVANCE PROVISION OF THE UNION
                  AGREEMENT AND MANDATORY ARBITRATION..................................... 7

    POINT II    THIS CASE SHOULD BE DISMISSED AS PLAINTIFF FAILED TO
                  EXHAUST HIS ADMINISTRATIVE REMEDIES............................................ 9

    POINT III  PLAINTIFF HAS FAILED TO MAKE A SUFFICIENT FACTUAL SHOWING
                  TO WARRANT CONDITIONAL CLASS CERTIFICATION UNDER 29
                  U.S.C. § 216 (B) OF THE FAIR LABOR STANDARDS ACT. ...................... 11

    POINT IV  THE PROPOSED NOTICE IS INSUFFICIENT.............................................. 15

CONCLUSION............................................................................................................................ 16

## **TABLE OF AUTHORITIES**

**Cases**

*Aiola v. Malverne Union Free Sch. Dist.*, 115 F.Supp.3d 321 (E.D.N.Y. 2015)......................... 10

*Allied-Bruce Terminix Cos. V. Dobson*, 513 U.S. 265 (1995)....................................................... 8

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) .............................................................. 8

*Barfield v. New York City Health and Hospitals Corp.*, No. 05 CIV. 6319 (JSR),
   2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005) ............................................................................. 14

*Bonett v. Shawmut Woodworking & Supply Co.*, No. 19-CV-1125-LJV-MJR,
   2021 WL 423181 (W.D.N.Y. Feb 8, 2021).................................................................................... 11

*Brandy v. Canea Mare Contr., Inc.*, 34 A.D.3d 512, 825 N.Y.S.2d 230 (2006) ..................... 10, 11

*Brown v. Tomcat Elec. Sec., Inc.*, 03-cv-5175 (FB)(JO),
   2007 WL 2461823 (E.D.N.Y. Aug. 27, 2007) ............................................................................ 10

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) ............................................................... 8

*Daly v. Citigroup Inc.*, 939 F.3d 415 (2d Cir. 2019) ...................................................................... 8

*Flores v. Osaka Health Spa, Inc.,* 2006 WL 695675 (S.D.N.Y. 2006) ........................................ 13

*Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840 (2d Cir. 1987) ................................................. 8

*Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363 (S.D.N.Y. 2012).......................... 10

*Harrison v. McDonald's Corp.,* 411 F. Supp. 2d 862 (S.D. Ohio 2005).................................... 14

*Hoffmann v. Sbarro, Inc.,* 982 F. Supp. 249 (S.D.N.Y. 1997) ...................................................... 15

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)........................................................... 15

*In the Matter of Cayuga-Onondaga Counties Board of Cooperative Educational Services v.
   Sweeney*, 89 N.Y.2d 395, 654 N.Y.S.2d 92, 676 N.E.2d 854 (1996) ........................................ 9

*Jenkins v. TJX Companies Inc.,* 853 F. Supp. 2d 317 (E.D.N.Y. 2012)....................................... 15

*Khan v. Cougar Stop, Inc.*, No. CIV.A. H-06-2862,
   2007 WL 2777774 (S.D. Tex. Sept. 21, 2007)........................................................................... 14

*Marren v. Ludlam*, 14 A.D.3d 667, 790 N.Y.S.2d 146 (2005).............................................. 10, 11

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) ........................................................ 9

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983) ............................. 9

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir.2010) ...................................................................... 11

*Occilien v. Related Partners, Inc.*, No. 19 CIV. 7634 (KPF),
   2021 WL 184399 (S.D.N.Y. Jan. 19, 2021) ................................................................................ 9

*P & T Iron Works v. Talisman Constr. Co. Inc.*,
   18 A.D.3d 527, 795 N.Y.S.2d 306 (2d Dept. 2005) ................................................................. 10

*Pesantez v. Boyle Envtl. Servs.*, 251 A.D.2d 11 (1998) ............................................................... 11

*Prizmic v. Armour, Inc.*, No. 05-CV-2503(DLI)(MDG),
   2006 WL 1662614 (E.D.N.Y. June 12, 2006) ........................................................................... 14

*Pursuit Inv. Mgmt., LLC v. Alpha Beta Cap. Partners, L.P.*,
   127 A.D.3d 565 (1st Dept. 2015) ................................................................................................. 9

*Randle v. Conduent Inc.*, No. 19-CV-6797-FPG,
   2020 WL 1905241 (W.D.N.Y. Apr. 17, 2020) ............................................................................ 9

*Seltzer v. Clark Associates, LLC*, No. 20 CIV. 4685 (AKH),
   2020 WL 5525590 (S.D.N.Y. Sept. 3, 2020) .............................................................................. 9

*Stanislaw v. Erie Indemnity Co.*, No. CA 07-1078 ERIE,
   2009 WL 426641 (W.D. Pa. Feb 20, 2009) ........................................................................ 14, 15

*State of N.Y. v. Oneida Indian Nation of N.Y.*, 90 F.3d 58 (2d Cir. 1996) ................................ 8, 9

*Waldron v. Goddess*, 61 N.Y.2d 181 (1984) ................................................................................. 9

*Winsch v. Esposito Bldg. Specialty, Inc.*, 48 A.D.3d 558 (2d Dept. 2008) .................................. 11

iv

**<u>PRELMINARY STATEMENT</u>**

Sealand Contractors Corp. ("Sealand") has been in business for nearly 45 years as a highly regulated heavy highway and bridge construction business in New York. Sealand works on substantial public projects, like repairs to the New York State Thruway. Public projects in New York are governed by the Prevailing Wage, so most of Sealand's work involves multiple layers of wage oversight relating to the certified payment of overtime wages including union(s), New York State's Department of Labor and job owners.

Corey Infantino ("Plaintiff") was employed as a construction worker for Sealand. Now, over a year after leaving Sealand's employ, Plaintiff asserts that he routinely worked as many as ninety-eight (98) hours of the week – or 14 hours a day for 7 days a week – and was denied appropriate compensation for the same. Plaintiff's new position is completely at odds with the contemporaneous time records retained by Sealand, as well as Plaintiff's own verifications of the accuracy of such records. Plaintiff's new argument that Sealand's method of time keeping – including "hurrying" the execution of his approval of timesheets – resulted in the systematic denial of extraordinary overtime is without merit. Sealand paid Plaintiff for a total of 3,387 hours, which included 466.50 at an overtime rate (or approximately 13 hours a week). During his tenure he never asserted a Union grievance with respect to his employment, pay or timesheet review at Sealand. Although Plaintiff asserts now that Sealand wrongfully withheld overtime for hundreds of laborers over numerous jobs over numerous years (that were never caught by a job owner, union or the State of New York), Plaintiff was only able to secure the allegedly corroborating testimony of a single employee who worked for Sealand for four days and was paid more overtime than the amount he claims he was denied.

As a member of the Union, Plaintiff agreed to a grievance procedure and mandatory

1

arbitration in connection with the complaints he now makes against Sealand.  Even if this Court does not compel arbitration, it should still dismiss this complaint because Plaintiff failed to exhaust all of his administrative remedies in connection with a dispute involving Prevailing Wage.  This Court should not conditionally certify a class for these reasons, as well as because (1) Plaintiff has not shown that he has a commonality with other employees, especially at other job sites, and (2) Plaintiff has failed to make the minimal showing that Sealand had a plan to deprive any worker of overtime, especially in connection with Prevailing Wage Jobs.

Additionally, even if a conditional class certification was appropriate here, Plaintiff's proposed notice and procedure should be revised to provide an understandable definition of the class (which should include a definition of "laborer") and provide that opt in notices be received by the Clerk, as opposed to Plaintiff's counsel.

## STATEMENT OF FACTS

### A.     Relevant Procedural History

On October 1, 2020, Plaintiff on behalf of himself and all others similarly  situated, filed a Complaint against defendants Sealand and Daniel Bree ("Bree", and together with Sealand, the "Defendants") under the  Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), New York Labor Law and New York Codes Rules and Regulations seeking compensation for alleged unpaid overtime hours worked in excess of 40 hours per week and damages for failure to timely pay wages and to furnish proper wage statements.  Dkt. 1.  On or about February 19, 2021, Plaintiff filed a Motion for Conditional Class Certification Under U.S.C.  § 216(b)  (the "Motion").  In Plaintiff's Motion, Plaintiff requests that this Court certify a class  under 29 U.S.C. § 216(b) to include all non-managerial laborers employed by Defendants from October 1, 2017 through present (the "Time Period").  Dkt 20-2, Exhibit 4.  The  only  "evidence" in support of the

2

Motion is the Affidavits of Plaintiff and Antonio Hepburn. On February 4, 2021, Plaintiff requested that he be allowed to opt out of this Court's ADR process. Dkt 18.

### B.   The Parties

#### i.   Sealand

As set forth in the Declaration of Daniel Bree (the "Bree Declaration"), Sealand was founded in 1977 and for nearly 45 years as a well-established heavy highway and bridge contractor with over 200 employees, has *never* had an employee commence a lawsuit asserting that they were not paid overtime wages. Bree Declaration, ¶ 1. While Plaintiff worked for Sealand, Sealand had multiple ongoing projects including projects that were funded by federal, state, village, city or county government or school district ("Prevailing Wage Jobs"). Id. ¶ 4. An example of Prevailing Wage Jobs that Sealand was awarded by the New York State Thruway Authority is the Concrete Pavement Restoration from Milepost 347.1 to Milepost 351.4. Id. ¶ 5. As dictated by the Union Agreement (defined below), Plaintiff's hours on the job were contemporaneously maintained via iPad and by a Union foreman. Id. ¶ 10. For 80% of the jobs Plaintiff worked on, he also certified the accuracy of his time records. Id. ¶ 14. Several times during the 36 months he worked for Sealand, Plaintiff's paychecks were adjusted when he believed that there was an inadvertent error in his timekeeping Id. ¶ 15. Plaintiff has not alleged that for the entire time that he worked for Sealand he raised any unresolved dispute, complaint or grievance with respect to the accuracy of his timesheets or the amount of time he was given to certify the accuracy of those timesheets.

#### ii.   The Union and the Union Agreement

Plaintiff was a member of the Local 435 Laborers International Union of North American Affiliated with the AFL-CIO. As set forth in the Union Agreement attached to the Bree Declaration, the Union covered 5 totally different positions – flagger, basic, machine operator, blaster and

3

foreman.  The Union Agreement contains the following provisions:

**Article XX Arbitration**

1.    During the term of this Agreement, neither party shall or permit any lockout, strike, or other work stoppage or slowdown.  Further the Union will not aid, support or permit unauthorized strikes, slowdowns or work stoppages by its members.

2.    **Grievance Procedure:  All grievances or disputes involving any controversy, dispute or misunderstanding arising as to the meaning, application or observance of any provisions of this Agreement shall be handled in the manner hereinafter set forth**.  It is agreed that all matters pertaining to the interpretation of this Agreement must be referred directly to the Joint Committee, provided that if a grievance has not been filed, the matter shall not be a subject of arbitration until a grievance is filed.

Step 1.  All grievances must be made known in writing to the other party within (7) calendar days after the reason for such grievance has occurred.  The aggrieved employee's or employees' shop steward or another authorized representation of the Union shall first submit a written grievance to the Job Superintendent, or his duly authorized representative.  The Shop Steward or another authorized representative of the Union of the Employee or the Employees involved shall be present at any meeting between the Job Superintendent and such employee or employees.  The Job Superintendent or his duly authorized representative must make a written disposition of the matter within twenty-four (24) hours after the submission of such written grievance thereto.

Step 2.  If the disposition of the matter by the Job Superintendent or his duly authorized representative is not satisfactory, the matter must be taken up by the Business Agent, and representative of the Employer with authority to act within forty-eight hours of the written disposition set forth in Step 1.

Step 3.  If the disposition of the matter in Step 2 is not satisfactory, either party has a right to file its grievances with the Joint Committee referred to in Section 2 of this Article within seventy-two (72) hours after Step 2.

3.    The Unions, Association and Employer who are signatories to this shall together establish for the duration of this Agreement, a Joint Committee.  The Joint Committee shall consist of three (3) representatives of the Employers and three (3) representatives of the Union.  All meetings of the Joint Committee must be attended by each member or his alternate, but the absence of any member or alternate shall not invalidate the action of the members of the Joint Committee who are present.

It shall be the function of the Joint Committee to settle disputes and grievances which cannot be settled in accordance with Steps 1, 2 and 3 of the grievance procedure.  The Joint Committee shall formulate rules of procedure to govern the conduct of its

4

proceedings including the time, date and place of meetings.

A decision by a majority of the Joint Committee shall be final and binding on the parties and employees involved.  Failure of either party involved to comply with any final decision of or to submit to the jurisdiction of the Joint Committee shall give the other party immediate right to all legal and economic recourse.

4.   Rights of the Joint Committee.  The Joint Committee shall have the right to investigate all facts pertaining to the dispute**.  The Joint Committee shall, upon each dispute or grievance processed in accordance with this Article after completion of or as a part of Step 2, have the right to examine time sheets and any other records pertaining to the computation of compensation of any individuals whose pay is in dispute.**  Both parties shall be entitled to present such evidence and witnesses in support of their position as they see fit.

5.   Arbitration:  **If a grievance cannot be satisfactorily settled by a majority decision of the Joint Committee, the grievant shall request a list of seven (7) arbitrators from (1) the panel arbitrators of the New York Board of Mediation; (2) the Federal Mediation and Conciliation Service, or (3) the labor panel of the American Arbitration Association for final binding decision.  Such request shall be no later than fifteen (15) calendar days, from the date of the oral announcement of the Joint Committee's decision, by the grievant or his duly assigned representative**.  Further any arbitration agency named shall be used only for every third arbitration that may arise between the parties to the end that arbitrators be selected on a rotating basis in the order in which the agencies are hereinabove listed.  The arbitrator shall be selected by alternatively eliminating names from the seven (7) person list until on remains, the grievant or his representative shall strike the first name.

(Emphasis added).  As set forth above in section 4, members of the Union, including Plaintiff, are required to use the grievance process including mandatory arbitration of any controversy – arising from the Agreement, including those relating to the computation of pay.

The only exception to this clear and binding agreement would be if Sealand was in "violation" of its obligations with respect to wages, hours and fringe benefit payments.  Here, there was no violation, because Plaintiff was paid what his timesheets reflected he was owed – time sheets that Plaintiff certified were accurate.  Any attempt to now call this a "violation" would be a frivolous attempt to rewrite history.  Indeed, a violation would have also required notice – as it would have allowed the Union to "walk off the job", with Sealand having the opportunity to grieve a

5

determination as whether there was an actual violation.  In sum, given the plain language of the arbitration, there is not a scenario in which Plaintiff can bootstrap an argument that his claims are excluded from grievance and arbitration provisions because he now, over a year later, labels them as violations.

### iii.    Plaintiff

Plaintiff worked for Sealand from August 29, 2016 until on or about September 15, 2019. Bree Declaration ¶ 12.  Sealand's books and records reflect that while Plaintiff worked for Sealand, he was paid for a total of 3,387 hours, 466.50 of which were at an overtime rate. Id. ¶ 13.  For 80% of his employment at Sealand, Plaintiff worked on Prevailing Wage Jobs which required him to certify the accuracy of his timesheets – meaning he verified the hours contemporaneously recorded at job sites.  Id. ¶ 14.  Plaintiff did not participate in bulk time keeping, as demonstrated by the certification example attached to the Bree Declaration which reflects 4 employees working very different hours – 45 hours, 43.50 hours, 49.50 hours and 55 hours.  Id. Exhibit 5.  On a number of occasions during the course of his employment, Plaintiff contacted Sealand's payroll department because he believed his paycheck was incorrect and an appropriate adjustment to his payroll was made after investigation.  Id. ¶ 15.

### iv.    Antonio Hepburn

Mr. Hepburn worked for Sealand for 4 days.  Mr. Hepburn testifies that during that short period, he worked between 50-55 hours, entitling him to 10-15 hours of overtime pay.  For those 4 days, Mr. Hepburn was paid for 32 hours regular time pay, together with 16 hours overtime pay. Id. ¶ 11.

# ARGUMENT

## POINT I

### PLAINTIFF'S DISPUTE OVER THE AMOUNT OF WAGES PAID IS SUBJECT TO THE GRIEVANCE PROVISION OF THE UNION AGREEMENT AND MANDATORY ARBITRATION

The hours that Plaintiff worked for Sealand were contemporaneously recorded by a Union foremen onsite and were then, in most cases, subsequently certified by Plaintiff. Plaintiff does not dispute that he was paid all of those amounts. Plaintiff also does not dispute that on occasions when he found an inadvertent error, Sealand made appropriate adjustments to his paychecks. Plaintiff does not allege that Sealand forced him to certify inaccurate timesheets. Instead, Plaintiff argues that he believes he was shorted time because he was rushed in certifying the accuracy of his timesheets. In other words, he would have done a better job of keeping track of and reporting his time if Sealand had provided him with more time to review the accuracy of his timesheets.

Plaintiff is a member of the Union, and as is the cornerstone of any union agreement, Plaintiff had a grievance procedure to follow in the event there was a disagreement about his wages or a provision of his employment like his opportunity to certify the accuracy of timesheets. As set forth above, that Union Agreement required Plaintiff to timely file a grievance. In the event that the grievance was not resolved, "**[t]he Joint Committee shall, upon each dispute or grievance processed in accordance with this Article after completion of or as a part of Step 2, have the right to examine time sheets and any other records pertaining to the <u>computation of compensation of any individuals whose pay is in dispute</u>.**" And if the Joint Committee was unable to resolve Plaintiff's disputed pay, then there was an arbitration process: **"[i]f a grievance cannot be satisfactorily settled by a majority decision of the Joint Committee, the grievant shall request a list of seven (7) arbitrators from (1) the panel arbitrators of the New York Board of Mediation;**

7

**(2) the Federal Mediation and Conciliation Service, or (3) the labor panel of the American Arbitration Association for final binding decision."**

This grievance and arbitration clause must be enforced.  In *AT&T Mobility LLC v. Concepcion*, the Supreme Court described the main provision of the Federal Arbitration Act (the "FAA") as "reflecting both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." 563 U.S. 333, 339 (2011) (internal citations omitted). The arbitration process "allow[s] for efficient, streamlined procedures tailored to the type of dispute." *Id.* at 344.

The FAA covers all contracts "evidencing a transaction involving commerce", which the Supreme Court has interpreted as Congress "exercise[ing] its commerce power to the full." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001) (citing *Allied-Bruce Terminix Cos. V. Dobson*, 513 U.S. 265, 273-77 (1995)). Thus, most employment contracts (unless they fall under the transportation worker exception) are covered by the FAA. *Id.* at 119.

To determine whether an issue is arbitrable, courts must determine: "(1) whether the parties agreed to arbitrate; (2) the scope of that agreement; and (3) if federal statutory claims are asserted, ... whether Congress intended those claims to be nonarbitrable." *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (internal quotations omitted) (citing *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir. 1987)).

The 2nd Circuit has consistently stated that:

In accordance with the strong federal policy favoring arbitration as an alternative means of dispute resolution, we resolve any doubts concerning the scope of arbitrable issues in favor of arbitrability. In so doing, we will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

*Daly* 939 F.3d at 421 (internal quotations omitted) (citing *State of N.Y. v. Oneida Indian Nation of*

8

*N.Y.*, 90 F.3d 58, 61 (2d Cir. 1996)); *see also Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983); *Occilien v. Related Partners, Inc.*, No. 19 CIV. 7634 (KPF), 2021 WL 184399, at *5 (S.D.N.Y. Jan. 19, 2021); *Seltzer v. Clark Associates, LLC*, No. 20 CIV. 4685 (AKH), 2020 WL 5525590, at *2 (S.D.N.Y. Sept. 3, 2020); *Randle v. Conduent Inc.*, No. 19-CV-6797-FPG, 2020 WL 1905241, at *5 (W.D.N.Y. Apr. 17, 2020).

Here, Plaintiff is a party to a mandatory grievance and arbitration procedure.  Plaintiff has a wage dispute – language that is specifically identified in this grievance and arbitration provision and that is "clear, explicit and unequivocal." *Pursuit Inv. Mgmt., LLC v. Alpha Beta Cap. Partners, L.P.*, 127 A.D.3d 565, 565-66 (1st Dept. 2015) (citing *Waldron v. Goddess*, 61 N.Y.2d 181, 183 (1984)). This provision must be enforced, and arbitration compelled.

## POINT II

## THIS CASE SHOULD BE DISMISSED AS PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES

Plaintiff worked on Prevailing Wage Jobs in which the New York Department of Labor sets his entitlement to overtime.  Even if Plaintiff's claims were not subject to mandatory arbitration, they should be dismissed as disputes in connection with Prevailing Wage Jobs require an administrative process that undeniably was not followed by Plaintiff.

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences drawn in favor of the pleader.  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993).  Plaintiff worked on Prevailing Wage Jobs.  As such, his claims for additional compensation arise from the law governing prevailing wage, New York Labor Law § 220.  In the *Matter of Cayuga-Onondaga Counties Board of Cooperative Educational Services v. Sweeney*, 89 N.Y.2d 395, 401-403, 654 N.Y.S.2d 92, 676 N.E.2d 854 (1996), the New York State Court of Appeals stated:

9

Labor Law § 220, in content, structure and purpose confirms that a proceeding such as this, brought by the Commissioner of Labor to enforce the statutory and constitutional mandate, has as its overriding goal the vindication of a public interest rather than just to provide a forum in a particular case for the adjudication of a claimed personal statutory right.

Plaintiff's claims are deficient because of his failure to exhaust administrative remedies. *See Aiola v. Malverne Union Free Sch. Dist.*, 115 F.Supp.3d 321, 340 (E.D.N.Y. 2015); *Brown v. Tomcat Elec. Sec., Inc.*, 03-cv-5175 (FB)(JO), 2007 WL 2461823, at *3 (E.D.N.Y. Aug. 27, 2007) (internal citations omitted); and *Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363, 375-76 (S.D.N.Y. 2012) (noting that in order "[t]o pursue an overtime claim in court under [the NYLL] . . . a plaintiff must allege that an administrative hearing has been convened finding in his favor that is unreviewed, and that he has commenced the action within six months of that finding.")

Under Article 8 of the Labor Law, it is well settled that "[t]he determination of a prevailing wage claim is, in the first instance, the exclusive province of the fiscal officer and must be initially subjected to an administrative proceeding." *Brandy v. Canea Mare Contr., Inc.*, 34 A.D.3d 512, 514, 825 N.Y.S.2d 230 (2006) (quoting *P & T Iron Works v. Talisman Constr. Co. Inc.*, 18 A.D.3d 527, 529, 795 N.Y.S.2d 306 (2d Dept. 2005)). It is undisputed that Plaintiff did not exhaust his administrative remedies prior to bringing this action as required by the Labor Law and therefore this cause of action should be dismissed. *Marren v. Ludlam*, 14 A.D.3d 667, 669, 790 N.Y.S.2d 146 (2005).

In *Brandy*, the Appellate Division, Second Department, held that the "Supreme Court properly treated the plaintiffs' causes of action to recover on the bond as causes of action asserting violations of Labor Law §§ 220 and 220-g and thus properly determined that the plaintiffs were required to exhaust their administrative remedies prior to commencing a cause of action pursuant thereto under Labor Law § 220-g" 34 A.D.3d at 514 (citing *P&T Iron Works*, 18 A.D.3d at 528-

10

29; *Marren*, 14 A.D.3d at 669; *Pesantez v. Boyle Envtl. Servs.*, 251 A.D.2d 11 (1998)).

The *Brandy* court held that plaintiffs may not circumvent the exhaustion of remedies requirement under the statute by asserting that they did not really bring a cause of action pursuant thereto and concluded that "the Supreme Court properly granted those motions … which were for summary judgment dismissing those causes of action that were, in effect, pursuant to Labor Law §§ 220 and 220-g." 34 A.D.3d at 514.

As Plaintiff failed to bring an administrative complaint with the New York Department of Labor prior to the commencement of this action regarding the alleged non-payment of his overtime wages, Plaintiff has not satisfied the administrative prerequisites to his Labor Law § 220 claim, and the Court should dismiss this claim. *Marren*, 14 A.D.3d at 669; *Winsch v. Esposito Bldg. Specialty, Inc.*, 48 A.D.3d 558 (2d Dept. 2008).

<u>**POINT III**</u>

<u>**PLAINTIFF HAS FAILED TO MAKE A SUFFICIENT FACTUAL SHOWING TO WARRANT CONDITIONAL CLASS CERTIFICATION UNDER 29 U.S.C. § 216 (B) OF THE FAIR LABOR STANDARDS ACT.**</u>

Section 216(b) of the FLSA authorizes employees to maintain collective actions where they are "similarly situated" with respect to the alleged violations of the FLSA. 29 U.S.C. § 216(b); *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir.2010).  As recently discussed in the matter of *Bonett v. Shawmut Woodworking & Supply Co.* in connection with conditional certification, while the Plaintiff's burden is minimal, he must provide actual evidence of a factual nexus between his situation and those that he claims are similarly situated rather than mere conclusory assertions. No. 19-CV-1125-LJV-MJR, 2021 WL 423181, at *3 (W.D.N.Y. Feb 8, 2021).  In his declaration, Plaintiff claims that Defendants had a practice and policy of lumping the time worked by its non-managerial laborers in a generalized matter.  Declaration of Infantino, ¶ 7.  Plaintiff does not

11

address how he has first-hand knowledge of Sealand's payroll policy, nor does he address how he knows if any such policy applied to laborers on other jobs in which he was not working.  His own certification records disprove a practice of time lumping.  He also fails to provide any testimony that other laborers failed to properly certify their timesheet.

Plaintiff argues that he saw other employees work more than 40 hours but cannot testify that those individuals were not paid for any overtime which they would be entitled to.  In addition, Plaintiff could not have witnessed Sealand employees who were working on other jobs.  Plaintiff identifies 5 individuals that he remembers complaining about his wage disputes.  Notably, and despite this matter having been filed since October, Plaintiff is unable to supply any of their testimony.  Instead, Plaintiff has included only the affidavit of Mr. Hepburn, who worked for Sealand for 4 days.  In his Declaration, Mr. Hepburn testifies that he was entitled to between 10-15 hours of overtime during his employment, when he was in fact paid for 16 hours of overtime. Bree Declaration ¶ 11.

In sum, Plaintiff has not satisfied the minimum requirement of commonality because (1) he does not know how other laborers outside of his classification (flaggers, foremen, machine operators) were treated, (2) he doesn't know how any laborers on other worksites were treated, (3) aside from some alleged "water cooler" generalized complaints, he has no independent knowledge of whether the other laborers were paid all of their overtime, and (4) he has no first-hand knowledge about whether any of the other employees felt rushed certifying their time records. In sum, even when the lenient standard for conditional class certification under 29 U.S.C. § 216(b) is applied, Plaintiff has failed to make the required showing that there are similarly situated employees with respect to his claim for alleged unpaid overtime hours worked in excess of 40 hours per week set forth in Count I (FLSA - Overtime). As a result, Plaintiff's Motion for

12

Conditional Class Certification must be denied.

Moreover, Sealand did not have a common policy or scheme for depriving workers of overtime. To the contrary, it had the opposite. In addition to the contemporaneous time records made on the iPad verified by a Union foreman, its employees routinely confirmed the accuracy of those timesheets. Employees could also call Sealand when they believed there was an inadvertent error (as Plaintiff did several times).

Plaintiff, in just over 36 months, was paid 466.5 hours of overtime. The only evidence before this Court is that over a year after he stopped working for Sealand, his memory is that he worked more overtime hours than he was paid for and that he remembers complaining about his pay to five co-workers who also did not think that they were being paid enough for the job that they did (even though in the age of the internet and social media, there are no affidavits from any of these individuals). Given that this nearly 45-year-old company in one of the most highly regulated industries has never been a named defendant of an FLSA claim, Plaintiff's belief that he worked more than he was paid does not satisfy this Court's requirements for conditional certification. This is especially true because Plaintiff has no idea what laborers on other jobs and with other titles did or were paid, together with the physical impossibility that an individual routinely worked a construction job for 96 hours a week without injury or death. Additionally, there are no allegations that plaintiffs and the putative class members were together victims of a single decision, policy or plan. Incredibly, Plaintiff stops short of even attributing to any of the unnamed co-workers a direct statement that any were illegally denied overtime.

This is precisely the kind of rank hearsay and vague innuendo rejected in *Flores v. Osaka Health Spa, Inc.*, 2006 WL 695675 (S.D.N.Y. 2006). There, the district court found "of no evidentiary value" plaintiff's allegations that "defendants' spa customers typically paid cash tips

13

in amounts ranging from $20 to $50, and that the defendants 'confiscated our tips.'" *Id.* at 3. The court also found plaintiff's statement that she "served at least 7-8 customers per [12 -hour] shift and [that] the other massage therapists working my shift did the same" unsatisfactory and insufficient to make the "modest" required showing that "... she and the proposed plaintiffs together were the victims of a common policy or plan that violated the law." *Id.*

Numerous other cases have either stricken this kind of inadmissible hearsay or found it insufficient to warrant certification. *See, e.g., Prizmic v. Armour, Inc.*, No. 05-CV-2503(DLI)(MDG), 2006 WL 1662614 (E.D.N.Y. June 12, 2006); *Khan v. Cougar Stop, Inc.*, No. CIV.A. H-06-2862, 2007 WL 2777774, at \*2 (S.D. Tex. Sept. 21, 2007) (statement by named plaintiff "based upon discussions" with unnamed co-workers that others were not paid overtime stricken as not based on personal knowledge and in any event insufficient to support conditional certification); *Stanislaw v. Erie Indemnity Co.*, No. CA 07-1078 ERIE, 2009 WL 426641 (W.D. Pa. Feb 20, 2009); *see generally Harrison v. McDonald's Corp.,* 411 F. Supp. 2d 862 (S.D. Ohio 2005).

Even assuming *arguendo* Plaintiff's testimony suggesting other employees were not properly compensated were competent and admissible, these allegations would nonetheless be insufficient to warrant conditional certification of a collective action. Plaintiff was required to show that the reason why the employees were not compensated was not the result of error, but instead a corporate decision and policy to ignore the FLSA. *See Barfield v. New York City Health and Hospitals Corp.*, No. 05 CIV. 6319 (JSR), 2005 WL 3098730, at \*1 (S.D.N.Y. Nov. 18, 2005) ("plaintiff presents nothing but limited anecdotal hearsay to suggest that there is a widespread practice [uncompensated overtime] ... and no evidence whatever that this is pursuant to a policy of either [defendant]"). Plaintiff offers no firsthand evidence from any other employee alleging in

14

their own words that these practices were regularly applied. *Stanislaw*, supra, 2009 WL 426641, at \*2.  This is especially the case because Sealand was a party to the Union Agreement that had a grievance mechanism, as well as the fact that Sealand adjusted Plaintiff's check on 6 different pay periods when he alerted it to an issue.

Common sense dictates that a construction company could not have nearly 45 years of success securing countless significant public projects subject to the scrutiny of both its unions and the New York State Department of Labor, if it had really made a corporate decision to refuse to pay its employees overtime or other compensation in violation of law.  Instead, the reasonable inference is that no such policy existed.

## POINT IV

## THE PROPOSED NOTICE IS INSUFFICIENT

The United States Supreme Court has held that district courts have the discretion to  facilitate notice only "in appropriate cases." *Jenkins v. TJX Companies Inc.,* 853 F. Supp. 2d 317,  322 (E.D.N.Y. 2012) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)). Moreover,  even at the preliminary stage, the Court must find "some identifiable factual nexus which binds  the named plaintiffs and potential class members together as victims of a particular practice" or a  showing that the potential plaintiffs have been subjected to a common discriminatory scheme.    *Hoffmann v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (internal citations omitted).

Plaintiff has failed to make the required factual showing to warrant conditional certification of a class under 29 U.S.C. § 216(b) of the FLSA, so there is no need to  address his proposed class definition.  If there were, the proposed notice and procedure would be problematic for the reasons set forth above, including the lack of definition of "laborer."  A court is not bound by the class definition proposed by a plaintiff and may deny a  motion to conditionally certify

15

a class until appropriate amendments are made to the class definition. Moreover, the notice should dictate that the notices are returned to the clerk's office and not to the Plaintiff's counsel.

## **CONCLUSION**

Wherefore, Defendants respectfully request that this Court (1) compel Plaintiff's compliance with the grievance procedure and mandatory arbitration required in connection with his newfound disputes, or in the alternative, (2) dismiss this lawsuit on the basis of Plaintiff's failure to exhaust administrative remedies, or in the alternative, (3) deny the condition class certification on account of the failure to present credible evidence in support of the minimal required showing, or in the alternative, (4) revise the notices within this Court's discretion to include (a) a proper definition of a proposed class, and (b) a revision of the notice that direct opt-in notices to be submitted to the Clerk and not Plaintiff's counsel.

Dated:  March 29, 2021             ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN,
   Rochester, New York      FORMATO, FERRARA, WOLF & CARONE, LLP

           /s/ Maureen T. Bass
           Sharon P. Stiller, Esq.
           Maureen T. Bass, Esq.
           *Attorneys for Defendants*
           160 Linden Oaks, Suite E
           Rochester, New York 14625
           Telephone: (585) 218-9999
           Email:   sstiller@abramslaw.com
               mbass@abramslaw.com